IN THE UNITED STATES DISTRICT COURT



FILED

JAN 2 3 2013

Clerk, U.S. District Court
District Of Montana
Missoula

FOR THE DISTRICT OF MONTANA

**MISSOULA DIVISION**

| | |
|---|---|
| KEVIN RAYMOND SULLIVANT, | Cause No. CV 11-00119-M-JCL |
| Plaintiff, | |
| vs. | ORDER |
| SPECTRUM MEDICAL SERVICES, NURSE PRACTITIONER JUDY MUNSELL, RAVALLI COUNTY, and LT. SCOTT LEETE, | |
| Defendants. | |

## I.    INTRODUCTION

Plaintiff Kevin Sullivant (Sullivant) contends Defendants wrongfully

discontinued his medications after he was caught "hoarding" medications while

incarcerated in the Ravalli County Detention Center.  Defendants argue the

discontinuation of medications was reasonably justified.

The following motions are pending:  (1) Defendants Munsell and Spectrum

Medical Services' Motion for Summary Judgment (Dkt. 71); (2) Defendants Leete

and Ravalli County's Motion for Summary Judgment (Dkt. 78); (3) Defendants

Munsell and Spectrum's Motion for Leave to File Additional Factual Materials in

1

Support of Summary Judgment (Dkt. 84); and (4) Defendants Munsell and Spectrum's Motion to Strike (Dkt. 89).

Having considered the parties' arguments and submissions, the Court will deny Defendants Munsell and Spectrum's Motion for Summary Judgment, deny Ravalli County's Motion for Summary Judgment, grant Defendant Leete's Motion for Summary Judgment, deny the Motion for Leave to file additional materials, and deny the Motion to Strike.

## II.   MOTIONS FOR SUMMARY JUDGMENT

### A. SUMMARY JUDGMENT STANDARDS

A party is entitled to summary judgment if it can demonstrate "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).[1] That is, where the documentary evidence permits only one conclusion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986).

Rule 56 of the Federal Rules of Civil Procedure provides,

A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in

---

[1]Rule 56 was amended in 2010. It is appropriate to rely on cases decided before the amendment took effect, as "[t]he standard for granting summary judgment remains unchanged." Fed. R. Civ. P. 56, Notes of Advisory Comm. on 2010 amendments.

2

the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed.R.Civ.P. 56(c)(1).

The party seeking summary judgment bears the initial burden of informing the Court of the basis of the motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which demonstrate the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

When a defendant files a properly supported motion for summary judgment, a plaintiff may not rest on its allegations alone without "any significant probative evidence tending to support the complaint." *Anderson*, 477 U.S. at 249 quoting *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253 (1968). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-250 (internal citations omitted).

The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]. The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict.

3

*Anderson*, 477 U.S. at 252. "[I]f the factual context makes the non-moving party's claim *implausible*, that party must come forward with more persuasive evidence than would otherwise be necessary to show that there is a genuine issue for trial." *California Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987)(emphasis in original). Only disputes over facts that might affect the outcome of the suit under the governing law are "material" and will properly preclude entry of summary judgment. *Anderson*, 477 U.S. at 248. At the summary judgment stage, the judge's function is not to weigh the evidence or determine the truth of the matter, but to determine whether there is a genuine issue for trial. Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no "genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

In the context of a motion for summary judgment where a litigant is proceeding pro se, the court has an obligation to construe pro se documents liberally and afford the pro se litigant the benefit of any doubt. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam); *Baker v. McNeil Island Corrections Ctr.*, 859 F.2d 124, 127 (9th Cir. 1988).

## B. THE PARTIES' ARGUMENTS

In his Complaints, Mr. Sullivant alleged he was denied his mental health

4

medications while incarcerated in the Ravalli County Detention Center (Detention Center) beginning in August 2011. Sullivant was extradited from Kansas to Ravalli County on August 3, 2011 and arrived at the Detention Center with his prescription medications for major depression and major anxiety disorders. (Dkt. 5, p. 2). After making numerous requests, he was given dosages of his medications at 4:00 p.m. on August 4, 2011 and 8:30 a.m. on August 5, 2011. Mr. Sullivant admits he held back the second dose of his medications in order to take it at 5:00 a.m. and 9:00 p.m. which he contends was the "prescribed time." This "hoarding of medications" was discovered by jail officials and the medications were discontinued.

As a result of the withdrawal of the medications, Mr. Sullivant asserts he experienced major depression, anxiety, panic attacks, head and body aches, confusion, blurred vision, flu like symptoms, hallucinations, nausea, insomnia, deep despondency, and partial hearing loss in his right ear.

Mr. Sullivant seeks a monetary award of $540,000.00. Although he also sought mental health care from a counseling service in Hamilton, Mr. Sullivant has been transferred to the Start Program in Anaconda, Montana. Given his transfer out of Ravalli County, any claims for injunctive relief are now moot. *Preiser v. Newkirk*, 422 U.S. 395, 402–03 (1975); *Johnson v. Moore*, 948 F.2d

5

517, 519 (9th Cir.1991).

In several of his filings after the Amended Complaint, Sullivant discusses the discontinuation of his skin cream and anti-biotic Bactrim as if they were also claims in this case. (Dkt. 52, pp. 3-4; Dkt. 69, p. 2; Dkt. 75, p. 2; Dkt. 87, pp. 1-2). Sullivant first raised this issue within the time set for amended pleadings. (*See* Dkt. 42–Order extending time for amended pleadings to May 16, 2012; Dkt. 52 filed May 2, 2012). "[T]he rule favoring liberality in amendments to pleadings is particularly important for the pro se litigant." *Lopez v. Smith*, 203 F.3d 1122, 1131 (9th Cir. 2000) (citation and internal quotation marks omitted). Out of an abundance of caution, the Court will also consider Sullivant's claims the discontinuation of his skin cream and anti-biotic Bactrim. *See Slice v. Ferriter*, 448 Fed.Appx. 725, 727 (9th Cir. 2011); *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir.1990) ("[P]ro se pleadings are liberally construed, particularly where civil rights claims are involved."). The parties will be given a short period of time to conduct additional discovery on these claims and file further dispositive motions.

Defendants argue that since Sullivant admits he was hoarding medications there was a legitimate penological reason to take away his medications.

## C. UNDISPUTED FACTS[2]

During Sullivant's incarceration at the Ravalli County Detention Center, Spectrum provided inmate medical care and Defendant Munsell was the Spectrum employee primarily responsible for overseeing that care. (Dkt. 72–Spectrum SUF, p. 2, ¶¶ 4, 5). Munsell is an Advanced Practice Registered Nurse ("Nurse Practitioner") who is authorized under Montana law to prescribe, dispense, and administer prescription drugs. (Dkt. 72–Spectrum SUF, p. 2, ¶ 3).

When Sullivant first arrived at the Detention Center on August 3, 2011, he was given his correct dosages of Paxil, Wellbutrin, and Trazadone. (Dkt. 72–Spectrum SUF, ¶¶ 6-7; Dkt. 11–Amended Complaint, p. 5). On August 5, 2011, when Sullivant received his scheduled medication, Detention Officer Dan Hollar observed Sullivant trying to hide the medication he had just been given in his pants. Subsequent events and a cell search revealed additional pills in Sullivant's cell. (Dkt. 80–County SUF ¶ 3 citing Dkt. 49-2–Hollar Affidavit, ¶ 2).

---

[2]Although Sullivant offered no evidence in opposition to Defendants' motions, his complaints were made under the penalty of perjury and will be considered as declarations in opposition to the motion. A verified complaint in a pro se civil rights action may constitute an opposing affidavit for purposes of the summary judgment rule, where the complaint is based on an inmate's personal knowledge of admissible evidence, and not merely on the inmate's belief. *McElyea v. Babbitt*, 833 F.2d 196, 197–98 (9th Cir. 1987) (per curiam); *Lew v. Kona* Hospital, 754 F.2d 1420, 1423 (9th Cir. 1985).

Sullivant was prescribed to take his medications at 5:30 a.m. and 8:30 p.m. but medications at the Detention Center were distributed at 8:00 a.m. and 4:00 p.m. (Dkt. 72–Spectrum SUF, ¶ 8; Dkt. 11–Amended Complaint, p. 5). Sullivant explains that he was trying to hold back his medicine to take it at the prescribed time. (Dkt. 72–Spectrum SUF ¶ 9; Dkt. 11–Amended Complaint, p. 5). Due to this "hold back," or hoarding, of medication, Sullivant's medications were discontinued at the direction of Nurse Practitioner Munsell. (Dkt. 72–Spectrum SUF ¶ 10 citing Dkt. 11–Amended Complaint at pp. 5).

Less than one month after the medications were discontinued, a "minimal dose of Paxil was restored[.]" (Dkt. 72–Spectrum SUF ¶ 12 and Dkt. 80–County SUF ¶ 16 both citing Dkt. 11–Amended Complaint at 2-3).

## D. ANALYSIS

Whether Sullivant, who was in custody on a revocation of probation charge, was a pretrial detainee or a convicted prisoner, need not be decided here. The same standards apply to analyzing medical care claims under the Fourteenth Amendment and the Eighth Amendment. *Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir. 1998). In order to demonstrate a violation of the Eighth Amendment based on inadequate medical care, a plaintiff must prove "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs."

8

*Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Deliberate indifference under the Eighth Amendment involves the consideration of two elements: "[1] the seriousness of the prisoner's medical need[;] and [2] the nature of the defendant's response to that need." *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir.1992) *overruled on other grounds, WMX Technologies v. Miller*, 104 F.3d 1133 (9th Cir. 1997) (en banc); *see also Lolli v. County of Orange*, 351 F.3d 410, 419 (9th Cir. 2003). That is, a plaintiff must demonstrate "'objectively, sufficiently serious' harm and that the officials had a 'sufficiently culpable state of mind' in denying the proper medical care. Thus, there is both an objective and a subjective component to an actionable Eighth Amendment violation." *Clement v. Gomez*, 298 F.3d 898, 904 (9th Cir. 2002)(citing *Wallis v. Baldwin*, 70 F.3d 1074, 1076 (9th Cir. 1995)).

The objective component of deliberate indifference requires the showing of a serious medical need. "A 'serious' medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain'." *McGuckin*, 974 F.2d at 1059 (9th Cir. 1992) (quoting *Estelle*, 429 U.S. at 104); *see also Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006). Deliberate indifference to an inmate's serious mental health care needs violates the inmate's Eighth Amendment right to be free from cruel and

9

unusual punishment. *Smith v. Jenkins*, 919 F.2d 90, 92–93 (8th Cir. 1990).

The subjective component of deliberate indifference considers the nature of the defendant's response to the serious medical need and whether the defendant had a culpable mental state, which is "'deliberate indifference' to a substantial risk of serious harm." *Frost*, 152 F.3d at 1128 quoting *Farmer v. Brennan*, 511 U.S. 825, 835 (1994). "[T]he official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. "[T]he official's conduct must have been 'wanton,' which turns not upon its effect on the prisoner, but rather, upon the constraints facing the official." *Frost*, 152 F.3d at 1128 (quoting *Wilson v. Seiter*, 501 U.S. 294, 302-303 (1991)). "This second prong-defendant's response to the need was deliberately indifferent-is satisfied by showing (a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." *Jett*, 439 F.3d at 1096 citing *McGuckin*, 974 F.2d at 1060. "A prisoner need not show his harm was substantial; however, such would provide additional support for the inmate's claim that the defendant was deliberately indifferent to his needs." *Id.*

## 1. Spectrum and Munsell's Motion for Summary Judgment

Rule 56 of the Federal Rules of Civil Procedure requires a party asserting

10

that a fact cannot be genuinely disputed must support the assertion by: "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed.R.Civ.P. 56(c)(1). Spectrum's motion is not supported by sufficient admissible evidence.

Although Spectrum attached medical records to their motion, those records were not authenticated and cannot be considered. Unauthenticated documents cannot be considered in a motion for summary judgment. "A trial court can only consider admissible evidence in ruling on a motion for summary judgment. Authentication is a 'condition precedent to admissibility,' and this condition is satisfied by 'evidence sufficient to support a finding that the matter in question is what its proponent claims.'" *Orr v. Bank of America, NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002). "In a summary judgment motion, documents authenticated through personal knowledge must be 'attached to an affidavit that meets the requirements of [Fed.R.Civ.P.] 56(e) and the affiant must be a person through whom the exhibits could be admitted into evidence.'" *Orr*, 285 F.3d at 774 (*quoting Canada v. Blain's Helicopters, Inc.*, 831 F.2d 920, 925 (9th Cir. 1987)). A proper foundation may also be established through any manner permitted by

11

Federal Rule of Evidence 901(b) or 902. *Orr*, 285 F.3d at 774.

Defendants also argue that the Spectrum Defendants' Requests for Admissions should be deemed admitted because Sullivant's discovery responses were served four days late. There are two admission requests at issue: (1) that Sullivant's medications were withheld because he was hoarding or holding back his prescribed medications; and (2) that beginning August 5, 2011, Nurse Munsell had a reasonable justification for withholding the prescribed medications. Dkt. 72-4, pp. 11-12. Although Sullivant denied the first request in his discovery responses, he admits in his Amended Complaint that Defendant Munsell discontinued his medications because he was holding back one dose of his medications. (Dkt. 11, p. 5). The first request for admission will be deemed admitted.

However, the assertion that Nurse Munsell had a reasonable justification for withholding Sullivant's medications will not be deemed admitted. Rule 36 gives the Court discretion to allow a longer time for responding to admission requests. Fed.R.Civ.P. 36(a)(3) ("A shorter or longer time for responding may be . . . ordered by the court."). Rule 36 also allows the court to "permit withdrawal or amendment if it would promote the presentation of the merits of the action and if the court is not persuaded that it would prejudice the requesting party in

maintaining or defending the action on the merits." Fed.R.Civ.P. 36(b). To allow

this admission would undermine a merits determination and there has been no

showing that Spectrum would be prejudiced by having to litigate this issue without

an admission from Sullivant. *See Sonoda v. Cabrera*, 255 F.3d 1035, 1039 (9th

Cir. 2001).

Additionally, Sullivant, as a pro se prisoner litigant, was not given any

notice that his failure to timely respond to the requests for admissions would mean

they would be admitted. This Court agrees with the analysis set forth in *Medina v.

Donahoe*, 854 F.Supp.2d 733 (N.D.Cal. 2012) that requests for admissions must

contain a notice warning a pro se litigant that the matters shall be deemed admitted

unless the request is responded to within thirty days. *Medina*, 854 F.Supp.2d at

748 quoting *Diggs v. Keller*, 181 F.R.D. 468, 469 (D.Nev. 1998) citing *Klingele v.

Eikenberry*, 849 F.2d 409, 411–12 (9th Cir. 1988)). No such notice was provided

in Spectrum's discovery requests.

Given Sullivant's pro se prisoner status, his request for extension, the

minimal tardiness involved, the fact that the admission requests did not include a

warning of the effects of the failure to timely respond, and since it cannot be

shown that Defendants were prejudiced by the four to five-day delay, the Court

declines to find the tardiness of Sullivant's responses to be grounds to deem

Spectrum's second request for admissions admitted.

Without any testimony or other evidence upon which to base summary judgment, Spectrum's motion must be denied.

Even if the Court were to consider the attached medical records, there is a genuine issue of material fact regarding whether these Defendants were deliberately indifferent to Sullivant's serious medical needs.

Defendants concede for the purposes of this motion that Sullivant suffered from a serious medical need. Based upon the medical records from the Kansas Department of Corrections, Sullivant was diagnosed with Major Depressive Disorder and prescribed Paxil, Trazodone, and Wellbutrin. (Dkt. 72-3, p. 24—mental health psychiatric note dated July 12, 2011). There is an indication in these records that Sullivant had been on mental health medications for nearly 20 years. (Dkt. 2-1, p. 1). As a medical doctor felt Sullivant's condition was worthy of treatment, the Court will assume for purposes of this Order that Sullivant had a serious medical need. *See McGuckin*, 974 F.2d at 1059–60.

Defendants contend they were reasonably justified in discontinuing Sullivant's medication regime because jails have a legitimate penological interest in preventing drug abuse by inmates. There are two concerns with this argument. First, whether or not to provide medical care to prisoners can generally be

established without balancing competing institutional concerns.

> The deliberate indifference standard articulated in *Estelle* was
> appropriate in the context presented in that case because the State's
> responsibility to attend to the medical needs of prisoners does not
> ordinarily clash with other equally important governmental
> responsibilities. Consequently, "deliberate indifference to a
> prisoner's serious illness or injury," *Estelle*, supra, at 105, can
> typically be established or disproved without the necessity of
> balancing competing institutional concerns for the safety of prison
> staff or other inmates.

*Whitley v. Albers*, 475 US 312, 320 (1986). Thus, while there is a legitimate

penological interest in preventing drug abuse by inmates, that cannot be the sole

basis upon which to deny medical care.

If necessary medical treatment was delayed for non-medical reasons, a case

of deliberate indifference has been made out. *See Archer v. Dutcher*, 733 F.2d 14,

17 (2nd Cir. 1984). Denial of medical care as a form of punishment is acting in

deliberate indifference of medical needs if there is not some evidence that medical

consequences were considered. The only explanation set forth by Defendants for

the discontinuation of Sullivant's medications is that he was hoarding the

medications. The medical progress note from August 7, 2011 indicates Nurse

Practitioner Munsell stated in response to another nurse's call about Sullivant's

medications that she had already spoken with Sullivant and "rules are rules." Dkt.

72-3, p. 4. Thus, there is a genuine issue of material fact regarding whether

15

Sullivant's medical and mental health issues were deliberately disregarded as punishment for hoarding medications.

There is no indication that any medical effects were considered and Sullivant has plead under oath that being forced to withdraw "cold-turkey" from these medications caused him to experience major depression, anxiety, panic attacks, head and body aches, confusion, blurred vision, flu like symptoms, hallucinations, nausea, insomnia, deep despondency, shaking from seizure-like symptoms, and partial hearing loss in his right ear. Dkt. 11, p. 9, Dkt. 2-1, p. 10.

More troubling, is the lack of follow-up care Sullivant received after he was taken off the medications. Sullivant submitted inmate requests, grievances, and/or medical requests on August 7, 8, 9, 10, 11, 13, 14, 17, 25, and 30, 2011 asking for the return of his medications, indicating he was sick, and/or asking to see a psychiatrist or mental health counselor. Dkt. 2-1, pp. 13, 15; 49-1, pp. 29-32, 34, 35, 37, 38, 42. He was seen on August 7 regarding his medications but not by Defendant Munsell. Although Ms. Munsell informed Sullivant that she would consider reinstatement of his Paxil in two weeks, the Medical Progress Notes indicate that Munsell did not see Sullivant again until August 30, 2011 at which time she asked him to send a signed kite stating that he would take Paxil as ordered and not hoard or share it with others. Sullivant alleges in his Complaint

16

that to make another medical request would have cost him $5.00 which he did not have. Dkt. 2-1, p. 10. Nevertheless, Sullivant apparently was seen again on August 31, 2011 and was prescribed 10 mg of Paxil. Dkt. 72-3, p. 3.

There is a genuine issue of material fact regarding whether the discontinuation of Sullivant's medications as a means of punishment and without follow-up medical care, constituted cruel and unusual punishment. *King v. Kramer*, 680 F.3d 1013 (7th Cir. 2012). The Spectrum Defendants' motion for summary judgment will be denied.

### 2. Ravalli County's Motion for Summary Judgment

It is undisputed that the County delegates all medical decisions and issues at the detention facility to Spectrum personnel. (Dkt. 80–County SUF ¶ 8 citing Dkt. 49-1--Leete Affidavit, ¶ 6). It is also undisputed that the decision to discontinue Sullivant's medications was made by Defendant Munsell. (Dkt. 11–Amended Complaint, pp. 2-3; Spectrum SUF ¶ 10; and County SUF ¶ 15).

A municipality can be liable for "a single decision taken by the highest officials responsible for setting policy in that area of government's business." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 123 (1988). That is, when a single decision is made by an individual whose decisions represent the official policy of the local governmental unit on that issue and the challenged decision or act of the

17

official is the cause of the deprivation of the plaintiff's rights, the local governmental unit may be held liable. *Jett v. Dallas Independent School District*, 491 U.S. 701, 109 S.Ct. 2703, 2723 (1989).

If Munsell was the final policy-maker with respect to medical decisions at the jail, the County could still be liable for her decisions. There is a genuine issue of fact regarding whether Munsell was a final policymaker such that her decisions can create county liability. The term 'policy' has a fairly broad definition for the purpose of § 1983 and simply involves "a course of action consciously chosen from among various alternatives," and does not necessarily require an official declaration or authority over other individuals. *City of Oklahoma City v. Tuttle*, 471 U.S. at 823; *see also Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 n. 9 (1986).

The County cannot shield itself from § 1983 liability by contracting out its duty to provide medical services. The underlying rationale is not based on respondent superior, but rather on the fact that the private company's policy becomes that of the County if the County delegates final decision-making authority to it. *Ancata v. Prison Health Servs., Inc.*, 769 F.2d 700, 705–06 (11th Cir. 1985). The County's motion for summary judgment will be denied.

18

### 3. Lt. Leete's Motion for Summary Judgment

To the extent Lt. Leete has been sued in his official capacity, those claims will be dismissed. An official capacity suit against a municipal officer is equivalent to a suit against the entity. *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985). Courts may dismiss official capacity claims as redundant where the complaint names both the officers and the municipal entity. *Center for Bio–Ethical Reform Inc. V. L.A. Sheriff Dept.*, 533 F .3d 780, 799 (9th Cir. 2008).

Summary Judgment will also be granted to Lt. Leete in his individual capacity. There is no allegation that Lt. Leete is a medical professional. Lt. Leete is not alleged to have made any medical decisions, including the decision to discontinue Sullivant's medications. The only alleged involvement Lt. Leete had in Sullivant's medical care was to review Sullivant's grievance. In doing so, Lt. Leete apparently deferred to Defendant Munsell. (Dkt. 49-1, p. 3, ¶ 12).

Sullivant's allegations fail to show that Lt. Leete possessed a sufficiently culpable state of mind for an Eighth Amendment deliberate indifference claim. "[A]bsent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official . . . will not be chargeable with the Eighth Amendment scienter requirement of deliberate indifference." *Spruill v. Gillis*, 372 F.3d 218, 236 (3rd Cir. 2004). The

Eighth Amendment requires no more of the grievance examiner than he "review[ ] ... [the prisoner's] complaints and verif[y] with the medical officials that [the prisoner] was receiving treatment." *Greeno v. Daley*, 414 F.3d 645, 655–56 (7th Cir. 2005) *(citing Spruill*, 372 F.3d at 236); *see also Durmer v. O'Carroll*, 991 F.2d 64, 69 (3d Cir. 1993) (non-medical professionals not deliberately indifferent for failing to respond to inmate's complaints when prisoner is ostensibly under care of medical experts); *Keeper v. King*, 130 F.3d 1309, 1314 (8th Cir. 1997) (official who is not involved in medical decisions and has no medical expertise cannot be liable for medical staff's diagnostic decisions); *Berry v. Peterman*, 604 F.3d 435, 440 (7th Cir. 2010)(jail officials were "entitled to defer to the judgment of jail health professionals so long as [they] did not ignore [the prisoner])."

Sullivant does not present any evidence that Lt. Leete knew or should have known that Munsell was improperly treating him. There is no evidence that Lt. Leete was trained to assess whether it was improper to discontinue an inmate's mental health medications for nearly a month. Lt. Leete's Motion for Summary Judgment will be granted.

## III. MOTION FOR ADDITIONAL FACTUAL MATERIALS

After the filing of their motion for summary judgment, the Spectrum Defendants moved for leave to supplement the record with newly obtained

20

medical records from Montana State Prison. (Dkt. 84). Given that these records
are not authenticated, they are inadmissible for summary judgment purposes and
the motion for leave to file will be denied.

## IV.  **MOTION TO STRIKE**

The Spectrum Defendants moved to strike Sullivant's October 30, 2012
Motion to Oppose the Motion for Summary Judgment on the grounds that it is
neither a proper nor permissible response to their Motion for Summary Judgment.
(Dkt. 89). Defendants have not been prejudiced by the consideration of this brief.
Because Sullivant is a pro se prisoner, the Court must construe his documents
liberally and afford the benefit of any doubt. *Erickson v. Pardus*, 551 U.S. 89, 94
(2007) (per curiam); *Baker v. McNeil Island Corrections Ctr.*, 859 F.2d 124, 127
(9th Cir. 1988). The motion will be denied.

The Court also notes the Spectrum Defendants have indicated in several of
their motions that they previously asked Sullivant, in compliance with L.R. 7.1,
whether he opposed their motion and he responded on September 8, 2012 that he
opposed any and all motions challenging his claims in this litigation. (Dkt.
84–Motion for Leave to File Additional Factual Materials, Dkt. 89–Motion to
Strike). Sullivant's September 8, 2012 letter was presumably written in response
to correspondence asking whether he objected to Defendants' Motion for

Summary Judgment. To continue to rely on this communication as fulfilling their obligation under L.R. 7.1 for all future motions is improper.

The purpose behind L.R. 7.1 is for the parties to attempt to resolve issues on their own prior to involving the Court. It is improper for Sullivant to provide a blanket objection to all future motions without knowing the basis of those motions. Likewise, it is improper for Defendants to rely on any such blanket objection. The parties must communicate with each other prior to filing each future motion.

## V.  **CONCLUSION**

In light of Sullivant's additional claims regarding the alleged denial of his skin cream and Bactrim and pursuant to Rule 56(e) of the Federal Rules of Civil Procedure, the parties will be given an opportunity to conduct further discovery and file additional dispositive motions.

Accordingly, the Court issues the following:

## ORDER

1. Defendants Munsell and Spectrum Medical Services' Motion for Summary Judgment (Dkt. 71) is DENIED subject to renewal.

2. Defendants Leete and Ravalli County's Motion for Summary Judgment (Dkt. 78) is DENIED subject to renewal with regard to Ravalli County and

22

GRANTED as to Lt. Leete.

3. Defendants Munsell and Spectrum's Motion for Leave to File Additional Factual Materials in Support of Summary Judgment (Dkt. 84) is DENIED.

4. Defendants Munsell and Spectrum's Motion to Strike (Dkt. 89) is DENIED.

5. The parties shall have until March 11, 2013 to conduct additional discovery and file additional dispositive motions.

DATED this 23rd day of January, 2013.

Jeremiah C. Lynch
United States Magistrate Judge