IN THE UNITED STATES DISTRICT COURT

**FILED**

JUN 1 1 2013

FOR THE DISTRICT OF MONTANA

Clerk, U.S District Court
District Of Montana
Missoula

MISSOULA DIVISION

| | |
|---|---|
| KEVIN RAYMOND SULLIVANT,<br><br>Plaintiff,<br><br>vs.<br><br>SPECTRUM MEDICAL SERVICES, NURSE PRACTITIONER JUDY MUNSELL, and RAVALLI COUNTY,<br><br>Defendants. | Cause No. CV 11-00119-M-JCL<br><br><br>ORDER |

## I. INTRODUCTION

The only remaining issue in the matter is whether Defendants were deliberately indifferent to Plaintiff Kevin Sullivant's (Sullivant) serious medical needs when they discontinued his mental health medications after he was caught "hoarding" pills.[1]

The following motions are pending: (1) Sullivant's Second Motion for Summary Judgment (Dkt. 100); (2) Defendant Ravalli County's Motion to Dismiss

---

[1] All claims regarding Sullivant's placement in a holding/observation cell were dismissed without prejudice on July 26, 2012 for failure to exhaust administrative remedies. Dkt. 65. Lt. Scott Leete was dismissed with prejudice on January 23, 2013. Dkt. 97.

1

for Failure to Exhaust (Dkt. 105); (3) Defendants Munsell and Spectrum Medical Services' Motion to Dismiss for Failure to Exhaust (Dkt. 112); (4) Defendant Ravalli County's Second Motion for Summary Judgment (Dkt. 115); (5) Defendants Munsell and Spectrum's Second Motion for Summary Judgment (Dkt. 119); and (6) Sullivant's Motion to Oppose and Clarify (Dkt. 132).

Defendants have responded to Sullivant's motions but Sullivant only filed a response to Ravalli County's Motion for Summary Judgment. Dkt. 127. Sullivant's Motion to Oppose and Clarify has been construed as a response to Ravalli County's Statement of Undisputed Facts. Dkt. 132.

Having considered the parties' arguments and submissions, the Court will deny Sullivant's motions, grant Defendants' motions, and enter judgment in favor of Defendants.[2]

## II. MOTIONS TO DISMISS

On January 23, 2013, the Court found that Sullivant had arguably amended his claims to include allegations regarding the discontinuation of his skin cream and the antibiotic Bactrim. Dkt. 97, p.6. The parties were given additional time to conduct discovery on these claims. Both Ravalli County and the Spectrum

---

[2]Pursuant to 28 U.S.C. § 636(c), Fed.R.Civ.P. 73, D. Mont. L.R. 73, and the written consent of the parties, this matter has been assigned to me to conduct all proceedings, enter judgment, and conduct all post-trial proceedings. Dkt. 51.

2

Defendants filed Motions to Dismiss any claims regarding Bactrim because Sullivant failed to exhaust his administrative remedies. Sullivant did not respond to either motion. Defendants bear the burden of establishing that a plaintiff failed to exhaust administrative remedies. *Wyatt v. Terhune*, 315 F.3d 1108, 1120 (9th Cir. 2003).

The PLRA's exhaustion requirement states:

[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a); *see also Porter v. Nussle*, 534 U.S. 516, 524-25 (2002); *Booth v. Churner*, 532 U.S. 731, 741 (2001). This means a prisoner must "complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court." *Woodford v. Ngo*, 548 U.S. 81, 88 (2006). Exhaustion is mandatory. *Booth*, 532 U.S. at 741.

Ravalli County Detention Center has an inmate information manual containing rules and regulations which was provided to Sullivant. The manual sets out the grievance procedure for inmates to follow, which includes requesting a grievance form and setting forth on the form a brief description of the nature of

their complaint. Upon receipt, the Lieutenant or his/her designee investigates the grievance and provides a response to the aggrieved inmate within ten days. Dkt. 49-3, p. 8: Ex. 1 to Affidavit of Chris Hoffman, p. 5.

It is undisputed that Sullivant had a copy of the Ravalli County Detention Center's grievance policy and that he did not submit a complaint, request, or grievance regarding the discontinuation of Bactrim. It being undisputed that Sullivant did not properly exhaust the available administrative remedies for his Bactrim claims, Defendants' Motions to Dismiss will be granted.

### III. MOTIONS FOR SUMMARY JUDGMENT

Summary judgment is only appropriate if, viewing the evidence in the light most favorable to the party opposing the motion, there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989)(citations omitted). Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no "genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Material facts are those which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). If a moving party meets its burden of demonstrating the absence of a genuine issue of material fact, the burden shifts to the non-moving party to show

4

genuine issues for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). At the summary judgment stage, the judge's function is not to weigh the evidence or determine the truth of the matter, but to determine whether there is a genuine issue for trial. *Meade v. Cedarapids, Inc.*, 164 F.3d 1218, 1221 (9th Cir. 1999).

## A. Factual Background

The majority of the facts bearing on the motions at issue were set forth in the January 23, 2013 Order. Dkt. 97. Those facts will not be restated herein. The parties however, have presented numerous new facts.

Through the affidavits of qualified medical experts, Defendants Spectrum and Munsell presented the following undisputed facts. Hoarding pills and other medication misuse poses significant risks to the health of a patient. These risks, include but are not limited to: overdose, abuse, and dissemination. Dkt. 121--Spectrum SUF, ¶ 25.

Paxil, if used to excess, can lead to serotonin syndrome. Serotonin syndrome is a potentially life-threatening drug reaction. Symptoms include agitation, restlessness, diarrhea, increased heart rate, hypertension, hallucinations, hyperthermia, loss of coordination, nausea, over-reactive reflexes, rapid changes in blood pressure, and vomiting. This can occur when one takes medicines, such as Paxil or Prozac, in excess or when combined with another medicine that might

also have serotonergic effects. Trazodone has serotonergic effects and, if used in excess, especially in excess combined with Paxil in excess, can cause serotonergic syndrome. It is sometimes abused since it is sedating. Furthermore, Trazodone can cause priapism. Priapism is an emergency condition that requires surgical intervention. In addition, Trazodone, combined with Wellbutrin, increases the risk of seizures by additive effects. Though these are frequently used together, when misused, overused or abused, the risk is significant. Dkt. 121--Spectrum SUF, ¶ 26.

Wellbutrin, if used to excess, can cause seizures, which can lead to death. Furthermore, if one crushes a long-acting tablet of Wellbutrin, it becomes an immediate-release tablet and then the same dosage would be excessive, leading to seizures. In addition, Wellbutrin, when combined with Paxil, may increase the level of Paxil by inhibiting hepatic metabolism, creating a greater risk for serotonin syndrome. Though Trazodone, Paxil, and Wellbutrin are frequently used together, the misuse, overuse, and abuse would more likely lead to problems than if it was used correctly.

Because Sullivant had been caught hoarding pills, he could not be counted on to take his medications at safe dosages. Medical staff had to consider that Sullivant could have been using excessive amounts of medications alternating

with none, trading his pills in the jail (which puts others at risk), or he could have been crushing his pills in a manner of abuse. Dkt. 121--Spectrum SUF ¶ 26.

Defendant Munsell determined that the health and safety risks associated with continuing to provide these medications to Sullivant after it was discovered that he was hoarding and misusing his medications outweighed any risks associated with discontinuing the medications. Dkt. 121--Spectrum SUF 28. The risks associated with discontinuing these medications were minimal, while the risks associated with hoarding and misusing these medications can be life-threatening. Dkt. 121--Spectrum SUF ¶ 29. It is also undisputed that upon the discontinuation of his medications, Sullivant was placed in the medical observation and the padded cell from August 5, 2011 until August 16, 2011. Dkt. 49-1: Leete Affidavit, ¶ 13. The padded cell and the medical observation cell are used among other reasons, for observation and medical management of an inmate's physical condition and observation and management of an inmate's risk behavior or potential for suicide. Dkt. 49-1: Leete Affidavit, ¶ 5.

Sullivant alleges he had Bactrim in his property when he was transported from Kansas. He alleges he was infected with MRSA staff infection while he was in Kansas and was prescribed Bactrim while incarcerated in Kansas. Dkt. 52 p. 3; 69 p. 2; 75 p. 2; and 87 pp. 1-2. Defendants argue that Sullivant's medical records

do not reflect that Sullivant was ever diagnosed with MRSA or prescribed Bactrim. Dkt. 117–Ravalli County SUF ¶ 22

## B. Analysis

As set forth in prior Orders, in order to demonstrate a violation of the Eighth Amendment based on inadequate medical care,[3] a plaintiff must prove "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

### 1. Discontinuation of Mental Health Medications

Defendants have presented expert testimony that the decision to discontinue Sullivant's mental health medications after he was discovered hoarding pills was an appropriate medical decision and constituted appropriate medical treatment. Dkt. 117-2: Irwin Affidavit, ¶ 7; Dkt. 121-5: Kleinman Affidavit. This is undisputed expert testimony. Sullivant's only response is that he was not hoarding his medications rather he was holding them back to take at the appropriate time of

---

[3]Whether Sullivant, who was in custody on a revocation of probation charge, was a pretrial detainee or a convicted prisoner, need not be decided here. The same standards apply to analyzing medical care claims under the Fourteenth Amendment and the Eighth Amendment. *Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir. 1998).

day.³ Sullivant specifically disputes Defendants' contention that he had discontinued his own medications. Dkt. 132, p. 3. Regardless of the reasons why Sullivant was "holding back" his medications, there is undisputed evidence that it was completely reasonable for defendants to be concerned with his misuse of those medications.

It is also undisputed that there are significant medical risks associated with Sullivant misusing his mental health medications and those risks are more serious and outweigh the risks associated with discontinuing the medications. As Dr. Kleinman testified, the consequences of the misuse and abuse of Sullivant's medications could be life threatening. Dkt. 121-5, p. 6. There is undisputed medical expert testimony that Ravalli County Detention Center and Nurse Practitioner Munsell provided reasonable and appropriate care to Sullivant. Dkt. 121-5, p. 6: Kleinman Opinion, p. 3. Sullivant has presented no genuine issue of material fact to dispute these opinions. The undisputed facts demonstrate that Defendants were not deliberately indifferent to Sullivant's serious medical needs.

---

³Sullivant also argues there are disputed issues regarding where he was initially placed when he arrived at the detention center. Dkt. 127, p. 2. This is not an issue material to the summary judgment decision. Additionally, Sullivant argues he was not just denied his medications for a "brief period of time," because he has not been put back on most of the medications he was on when he arrived at the detention center. Dkt. 127, p. 3. Defendants do not dispute that Sullivant has not been put back on most of his mental health medications. Dtk. 121, ¶¶ 45-46.

Having found that Spectrum and Defendant Munsell did not violate Sullivant's constitutional rights, Ravalli County's Motion for Summary Judgment will also be granted. *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986)("When no constitutional harm has been inflicted upon a victim, damages may not be awarded against a municipality.").

## 2. Discontinuation of Skin Creme

According to the Spectrum Medication Administration Records Sullivant was issued a Fluocinolone Acetonide Cream 0.025% to be used as directed for psoriasis on August 4, 2011. Dkt. 121-3, p. 56.[4] On August 8, 2011, medical staff noticed that Sullivant had a tube of partially used psoriasis cream. Because staff could not see the label clearly, the cream appeared to be expired, and it had a black tarry substance on the outside, it was discarded. Dkt. 121-3, p. 7. It is assumed that this was the Fluocinolone Acetonide Cream which is listed on the August 4, 2011 Medication Administration Record.

On August 20, 2011, there is a notation in the medical records that medical staff checked with the pharmacy to reorder psoriasis cream. Sullivant was then apparently told the MG-217 cream was $10.00. On August 22, 2011, he was

---

[4]It appears that this is the steroid cream which Sullivant brought with him when he was extradited from Kansas.

given MG–217 to be "kept on his person" and applied as directed. Dkt. 121-3, p. 7.

Defendant Munsell correctly argues that it is cannot be considered deliberate indifference to serious medical needs to discard expired and unsanitary ointments. Dkt. 121--Spectrum Facts, ¶ 49. Sullivant disputes that the tube was expired because, he contends, the Kansas Department of Corrections would not prescribe expired medications. Dkt. 132, pp. 3-4. Whether or not the cream was expired, is not material to this analysis. The medical record indicates it appeared to be expired and had a black tarry substance on the outside. Clearly the tube appeared unsanitary and staff was not acting deliberately indifferent when they discarded that medication.

It is also undisputed that Sullivant was issued a substitute cream within two weeks of his other cream being discarded. Sullivant has at most demonstrated a mere different of opinion regarding the course of medical treatment for his psoriasis, which is "insufficient as a matter of law, to establish deliberate indifference." *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996); *see Franklin v. State of Oregon, State Welfare Div.*, 662 F.2d 1337, 1344 (9th Cir. 1981) (noting, also, that a disagreement between a prisoner and a medical professional over the most appropriate course of treatment cannot give rise to a

viable claim of deliberate indifference).

Defendants were not deliberately indifferent to Sullivant's medical needs with regard to the psoriasis cream.

## IV. **CONCLUSION**

Defendants' Motions to Dismiss will be granted. Having concluded that Defendants were not deliberately indifferent to Sullivant's medical needs, Defendants' Motions for Summary Judgment will also be granted and Sullivant's Second Motion for Summary Judgment will be denied. Sullivant has not shown that there is no material issue of genuine fact such that he would be entitled to judgment as a matter of law. Sullivant's Motion to Oppose and Clarify (Dkt. 132) has been construed as a response to Defendants' Motions for Summary Judgment. That motion will be terminated.

Accordingly, the Court issues the following:

**ORDER**

1. Sullivant's Second Motion for Summary Judgment (Dkt. 100) is denied.

2. Defendant Ravalli County's Motion to Dismiss for Failure to Exhaust (Dkt. 105) is granted.

3. Defendants Munsell and Spectrum Medical Services' Motion to Dismiss for Failure to Exhaust (Dkt. 112) is granted.

4. Defendant Ravalli County's Second Motion for Summary Judgment (Dkt. 115) is granted.

5. Defendants Munsell and Spectrum's Second Motion for Summary Judgment (Dkt. 119) is granted.

6. The Clerk of Court shall administratively terminate Sullivant's Motion to Oppose and Clarify (Dkt. 132).

7. The Clerk of Court is directed to close this matter and enter judgment in favor of Defendants pursuant to Rule 58 of the Federal Rules of Civil Procedure.

8. The Clerk of Court is directed to have the docket reflect that the Court certifies pursuant to Rule 24(a)(3)(A) of the Federal Rules of Appellate Procedure that any appeal of this decision would not be taken in good faith. No reasonable person could suppose an appeal would have merit. The record makes plain the instant Complaint lacks arguable substance in law or fact.

DATED this 11th day of June, 2013.

Jeremiah C. Lynch
United States Magistrate Judge